## ALPENA ELECTRIC LIGHT CO. *v.* CITY OF ALPENA.

ELECTRIC LIGHT COMPANIES—ORDINANCES—LIABILITY OF CITY AFTER EXPIRATION OF CONTRACT.

A city ordinance provided that an electric light company should erect and maintain such street lights as the council should order, and that the city should pay the contract rate agreed on for lights so furnished. The city reserved the right to amend or change any provision of the ordinance, except that permission to use the streets should not be withdrawn. The company might abandon its rights and privileges on giving six months' notice. A contract was made to furnish lights at a certain rate for five years. The city refused to pay for lights after the expiration of the contract, but the company continued to furnish lights, claiming the right to recover the former contract price. *Held,* that the company could not recover for lights furnished after the city refused to pay.

Error to Alpena; Emerick, J. Submitted November 12, 1901. (Docket No. 93.) Decided April 25, 1902.

*Assumpsit* by the Alpena Electric Light Company against the city of Alpena to recover for public lighting. From a judgment for plaintiff, on verdict directed by the court, for less than the amount claimed, it brings error. Affirmed.

*Joseph H. Cobb* ( *R. J. Kelley,* of counsel ), for appellant.

*I. S. Canfield* and *C. R. Henry,* for appellee.

LONG, J. The plaintiff company was incorporated under the laws of this State in 1882 for the purpose of manufacturing and generating electricity for commercial and lighting purposes. In 1883 it entered into a contract with the city of Alpena to furnish 16 street lights, and not to exceed 4 additional ones, at a price named. This contract

was to continue for two years. From the date of this contract until October 20, 1890, the plaintiff company, by similar arrangement, continued to furnish street lights for the city at a price mutually agreed upon from time to time. During all this time the plaintiff company had no franchise, by ordinance or otherwise, from the city, for occupying its streets, public grounds, and buildings for the purpose of lighting; nor did it have any incandescent works or plant for the purpose of furnishing lighting to the inhabitants of the city.

On October 20, 1890, a franchise was granted, by ordinance, to the Thomson-Houston Electric Company and its assigns, which was duly accepted in writing by said company on October 29th, and was on the same day duly assigned by said Thomson-Houston Electric Company to the plaintiff. It appears from the record here that from the last-named date the city has treated the Alpena Electric Light Company as entitled to all the rights and privileges under said franchise. It also appears that, when the plaintiff company acquired the rights and privileges under said ordinance, it had but a small arc-lighting plant, sufficient to carry only about 20 lights, but that it immediately set about enlarging its works, and continued them until completed, not only extending the arc-light plant, but providing an incandescent plant capable of supplying the inhabitants of the city, then numbering from 10,000 to 15,000 people. It also appears that under the ordinance the city has from time to time directed the installing of street lights at different points in said city, until the plaintiff company has established some 44 lights, and constructed several miles of light wires.

In July, 1894, the common council of the city, by resolution, agreed with the plaintiff company upon a price for street lights for the period of five years from the 1st day of July, 1894; fixing it at $75 per light for all lights then installed, and such as should thereafter be installed. Under this arrangement the company furnished lights both to the inhabitants and the city, and installed such

lights as were ordered.   At the expiration of this contract the parties were unable to agree upon a price to be paid for lights, and the city thereupon refused to pay for any street lights after July 1, 1899, unless the plaintiff accepted a contract to supply said lights at $50 per light.   The plaintiff company declined to accept this proposition, but has continued to furnish the 44 street lights which it had installed, and presented its claim for payment therefor to the common council at the rate of $75 per light.   This the city refused to pay; the city contending that it was not liable for any sum whatever after the 14th day of August, 1899,—that being the date at which it refused to pay for further street lighting.

The court directed the jury to find a verdict for the plaintiff for the sum of $444.56, being the price of furnishing 44 street lights for the period from the 1st day of July, 1899, to the 14th day of August in the same year, at $75 per light, and interest on the same to the date of the verdict.   The court also directed the jury that the plaintiff could not recover for furnishing any lights since that date.   The plaintiff brings error.

The ordinance passed on October 20, 1890, and which was assigned to the plaintiff thereafter, is called " Ordinance No. 42;" and under this, and the dealings between the parties since that time, the plaintiff contends:

1.  That the city is bound, during the lifetime of plaintiff's franchise, to take and pay for such street lights as the city ordered installed.

2.  That, a reasonable price having once been fixed by the parties for street lights, it must continue until changed by mutual agreement, or, in case a mutual agreement cannot be arrived at between the parties, it must continue until the dissatisfied party moves in a judicial proceeding to have a price fixed which shall be deemed reasonable.

3.  That the plaintiff in this action is entitled to recover a reasonable price for street lights actually furnished from July 1, 1899, to January 1, 1901.

We think the ordinance cannot be so construed.   Section 8 of the ordinance requires that:

"The said electric company shall erect and maintain such street or other lights as the council may from time to time order, and shall furnish such light or lights within a reasonable time from the date of notice received by it of the action of the common council relating thereto: *Provided*, that the city shall pay the contract rate agreed on by said electric company for all lights so furnished."

Section 9 provides:

"The provision of section number one of this ordinance, relative to the permission for the occupancy of the streets, shall not be repealed or consent withdrawn without the consent of said electric company; but the common council hereby expressly reserves the right to amend or change the provisions of this ordinance in all other respects as in their judgment the public good may demand."

Section 10 provides:

"The said electric company may at any time abandon the rights and privileges herein granted, restoring the grounds and streets occupied by them to their former condition: *Provided*, that six months' previous notice shall be given to the council by said electric company of their intention to enter on such abandonment, and all city lights shall be maintained by them till the expiration of said six months, providing the council so order. A failure to give such notice, or to maintain the lights ordered by the common council or private individuals, either under the provisions of this section, this ordinance, or by virtue of contract made by said electric company with the city or individuals, shall render the permission and authority as specified in section one of this ordinance null and void at the option of the common council."

It is apparent from a reading of the ordinance that the price to be paid by the city was left by the ordinance to an agreement or contract thereafter to be entered into between the city and the company; and the mere fact that a contract or contracts had been made fixing the price at $75 per light would not bind the city to continue to take lights at that rate for the entire lifetime of the franchise, to wit, for 30 years from 1890. The ordinance itself contains no contract or agreement binding the city to take lights at any price for any definite time.

We think the court was not in error in his direction to the jury.   The judgment must be affirmed.

The other Justices concurred.